The Honorable John W. Parkerson State Representative 520 Ouachita Avenue Hot Springs, Arkansas 71901-5196
Dear Representative Parkerson:
This is in response to your request for an opinion on whether a county is obligated to pay the expenses associated with the use of electronic voting systems used in a primary election. Specifically, you indicate that for many years, Garland County used "voting machines." Section 7-5-508(b) of the Arkansas Code provides that a county must pay the expenses of using voting machines in primary elections. Recently, however, Garland County purchased an "electronic voting system" and used it in the recent primary election. The statute with reference to paying the expenses of using electronic voting systems is silent with regard to primary elections. You have therefore asked my opinion as to the County's obligation to pay the expenses of a primary election which uses an electronic voting system.
It is my opinion that the County is under no obligation to pay the expenses of a primary election using an electronic voting system, although the County may lawfully fund these expenses if it chooses to do so.
As you have noted, the relevant statute is A.C.A. § 7-5-605
(Repl. 1993). Subsection (b) of this statute provides as follows:
 The costs of using electronic voting systems at all general and special elections, including costs of supplies, technical assistance, and transportation of the systems to and from polling places, shall be paid by the municipality or county in which the systems are used from the municipal or county general funds or such other source of public funds as may be available.
This statute governs costs associated with "general and special elections," but does not mention primary elections. See alsogenerally A.C.A. § 7-5-104 (Repl. 1993) (regarding general elections). "General or special election" means the regular biennial or annual elections for election of United States, state, district, county, township, and municipal officials and the special elections to fill vacancies therein and special elections to approve any measure. . . ." A.C.A. § 7-1-101(3). "Primary election" is separately defined by the same statute as "any election held by a political party in the manner provided by law for the purpose of selecting nominees of said political party for certification as candidates for election at any general or special election in this state." A.C.A. § 7-1-101(2). Clearly, therefore, the reference to "general and special elections" in A.C.A. § 7-5-605 does not apply to primary elections.
You note that another provision of law governing electronic voting systems, however, A.C.A. § 7-5-604(b), provides that:
 So far as applicable, the procedures provided by law for voting by other means and the conduct of the election in regard thereto by the election officials, not otherwise inconsistent with this subchapter, shall apply to the system of electronic voting and tabulation as authorized in this subchapter.
You note that this provision could be interpreted to require the county to pay the expenses of primary elections where electronic voting systems are used because another statute provides that the county is to pay the expenses of primaries using "voting machines." See A.C.A. § 7-5-508(b). "Voting machines" are an "other means" of voting, and it is argued that for this reason the procedures provided by law for the conduct of the election with regard to "voting machines," including the procedures for payment of expenses related to a primary, should be adopted in the use of electronic voting systems by virtue of A.C.A. § 7-5-604(b) above. In fact,
 this was the conclusion of Op. Att'y Gen. 86-420 (copy enclosed). This conclusion, however, and the 1986 opinion ignore both another extremely relevant Arkansas statute, and the legislative histories of the provisions cited above.
Section 7-3-101 (Repl. 1993) of the Arkansas Code provides that:
 Subject to the provisions of this act and other applicable laws of this state, organized political parties shall:
* * *
 (4) Pay the expenses of their own primary election. However, any part of the expenses of a primary election may be paid by a county whenever an appropriation therefor is made by the quorum court of the county.
It may therefore be concluded that because A.C.A. § 7-5-605 is silent on the question of payment of expenses of using electronic voting systems in primary elections, this general provision controls, and the county is not obligated to pay the expenses, but may if it wishes to do so. This conclusion is particularly compelling when the history of A.C.A. § 7-5-605 is reviewed. When originally adopted, this statute provided that the expenses of using electronic voting systems in primary elections were to be "defrayed by the political party unless specific funds are provided by the county or city therefor." See Acts 1977, No. 77, § 3(c). This language was amended by Acts 1979, No. 738, § 2 to omit any reference to primary elections. The amendment left only the language regarding "general and special elections" set out earlier in this opinion. The omitted language was redundant in light of A.C.A. § 7-3-101 which already provided that counties could, but were not required to, fund party primaries. Cf.also Moorman v. Pulaski County Democratic Party,271 Ark. 908, 611 S.W.2d 519 (1981).
In addition, the argument that A.C.A. § 7-5-604(b) renders applicable the provisions for payment of costs with regard to voting machines ignores the fact that another method of voting, paper ballots, does not require the counties to pay for the costs of primaries. Section 7-5-604(b) states that "so far as applicable, the procedure provided by law for voting by othermeans . . . shall apply to the system of electronic voting. . . ." Emphasis added. With regard to payment of expenses relating to primaries, there are two other means of voting with two different methods of payment. Where voting machines are used, the county is to pay the expenses. A.C.A. § 7-5-508(b). Where paper ballots are used, presumably the provisions of § 7-3-101(4) allow the county to fund the primary, but do not require it to do so. How can one procedure with regard to payment be chosen over another under A.C.A. § 7-5-604(b)? In my opinion, this section contemplates that such other procedures will apply where not inconsistent with the electronic voting subchapter or each other.
Finally, the legislature could not have had in mind, when it enacted A.C.A. § 7-5-604(b) (which renders applicable to electronic voting procedures utilized by other means of voting), procedures relating to payment of costs of primaries, because at the time of the original adoption of § 7-5-604(b) (by Act 77 of 1977) that same act itself provided that the expenses of primaries using electronic voting were to be borne by the political parties unless funds were provided by the county or city. There would have been no need to look to the provisions of other laws applicable to other voting methods to determine the law with regard to the expenses of primaries.
For all the foregoing reasons, it is my opinion that in counties using electronic voting systems, the county may, but is not obligated to, pay the expenses connected with the use of such systems in primary elections. To the extent Op. Att'y Gen. 86-420 reaches a contrary result, it is superseded.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
Enclosure